UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SON HONG,

                    Plaintiff,

        v.

MARY READ, et al.,

                    Defendants.

Case No. 8:19-cv-00086-RGK-JC

ORDER ACCEPTING FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE

[DOCKET NOS. 51, 54, 57]

Pursuant to 28 U.S.C. § 636, the Court has reviewed the operative First Amended Complaint, the three Motions to Dismiss the First Amended Complaint ("Defendants' Motions"), all documents filed by the parties in connection with Defendants' Motions, and all of the records herein, including the October 26, 2020 Report and Recommendation of United States Magistrate Judge ("Report and Recommendation") and plaintiff's objections to the Report and Recommendation ("Objections"). The Court has further made a *de novo* determination of those portions of the Report and Recommendation to which objection is made.

The Objections comprise ninety-eight pages in which plaintiff disputes the Magistrate Judge's recommendation that leave to amend be denied. Plaintiff contends that he should be permitted to file a Second Amended Complaint in

which he will, among other things, present additional allegations to support his claims that defendants discriminated against him as a male of Chinese and Vietnamese descent, in violation of the Equal Protection Clause, Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d ("Title VI"), and Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681 ("Title IX").  (See Objections at 5-97).  Plaintiff explains that he had left such allegations out of the First Amended Complaint in an effort to "keep the facts to a minimum" – even though the First Amended Complaint spans well over four hundred pages. (Objections at 7).  However, now having spent nearly one hundred additional pages trying to make his case, plaintiff still fails to identify any plausible basis for a claim.

As with the First Amended Complaint, plaintiff's Objections are riddled with purely speculative inferences and elaborate conjectures that defy all sense and reason.  Although the Court accepts as true all factual allegations, it is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.), opinion amended on denial of reh'g, 275 F.3d 1187 (9th Cir. 2001) (citation omitted).

Throughout the Objections, plaintiff continues to claim essentially that high-level California State University ("CSU") officials – namely, defendant Garcia, the former president of California State University - Fullerton ("CSUF"), and defendant Virjee, the former CSU vice-chancellor and subsequent CSUF president – specifically targeted plaintiff, who was then a student in the counseling Master's degree program at CSUF, and did so ultimately to have him dismissed from the program because he is a male of Chinese and Vietnamese descent.  (See, e.g., Objections at 14-19, 23-26, 29-30, 45, 51-52, 63-65, 84-86).  Plaintiff claims that defendants Garcia and Virjee did so by directing others in a variety of ways to undermine plaintiff's efforts to fulfill the practicum training requirements of the

counseling program.  (See, e.g., Objections at 15-25, 30, 37, 40, 54, 84-86; see
also FAC at 24, 48, 67, 98-99, 157, 190, 207, 262, 281).  The allegations offered to
implicate defendants Garcia and Virjee remain, as the Magistrate Judge
determined, "entirely speculative, if not farfetched."  (Report and Recommendation
at 36 n.19).  For example, plaintiff argues that defendant Garcia forced one
counseling program advisor to have plaintiff delay his required practicum training,
and forced another program advisor to falsely tell plaintiff that certain suitable
practicum opportunities were unavailable, while defendants Garcia and Virjee also
conspired with plaintiff's practicum supervisors (at outside entities) to obstruct his
endeavors.  (See Objections at 7-8, 13-16, 23-25, 27-30, 37-42).  As to why the
CSUF president would specifically target plaintiff for dismissal, plaintiff now
speculates that defendant Garcia, motivated by CSUF budget concerns, must have
thought it was a bad investment to keep a student in the counseling program who
was a male of Vietnamese and Chinese descent when, according to plaintiff, people
of Vietnamese and Chinese descent tend to have more trouble succeeding as
counselors, and two males previously in the CSUF counseling program (who were
not of Chinese or Vietnamese descent) had presented some difficulties for the
department.  (Objections at 13-15; see also FAC at 15-16, 81-82).  Plaintiff even
speculates, again without any plausible facts, that defendant Garcia left her CSUF
position at the end of 2017 (to be replaced by defendant Virjee) *because* Garcia
had forced several faculty members, administrators, and others to "violate
plaintiff's civil rights."  (Objections at 16-17).

     All of plaintiff's allegations against Garcia and Virjee are similarly
implausible and based on pure conjecture.  Therefore, regardless of whether
plaintiff could plausibly allege discrimination, plaintiff has failed to demonstrate

1   any potential claim against these defendants.[1]

2          Even so, plaintiff also still fails to plausibly allege discrimination by any

3   individual or entity.  Throughout the Objections, plaintiff continues to argue that

4   all the obstacles he confronted in the counseling program and his practicum

5   training were intended to discriminate against him as a male of Chinese and

6   Vietnamese descent, though his only apparent support is that he was allegedly

7   treated differently than any other student in the counseling program, and he was the

8   only counseling Master's student at the time who was a male of Chinese and

9   Vietnamese descent.  (See, e.g., Objections at 5-6, 11-12, 22-23, 27-28, 30-32, 34-

10  37, 40-41, 44-46; FAC at 28-29, 52-53, 71-72).  Plaintiff's Objections additionally

11  offer a few specific examples of different treatment given to counseling students

12  who were female and were not of Chinese and Vietnamese descent.  (See

13  Objections at 20-22, 42-47).  However, these allegations still fail to support a

14  reasonable inference that plaintiff was treated differently *because of* his gender or

15  race, particularly because the allegations do not suggest that plaintiff and these

16  other students were otherwise alike in all relevant respects.  See Nordlinger v.

17  Hahn, 505 U.S. 1, 10 (1992) ("Similarly situated" persons are those "who are in all

18  relevant respects alike."); Snoqualmie Indian Tribe v. City of Snoqualmie, 186 F.

19  Supp. 3d 1155, 1163 (W.D. Wash. 2016) (a plaintiff "must plead sufficient detail

20  about the proposed comparator so that the court can reasonably infer that racial

21  animus accounts for the difference in treatment") (citations omitted).  To the

22  contrary, the allegations themselves frequently point to rational, non-

23  discriminatory reasons for the disparate treatment.  (See, e.g., Objections at 42-50;

24  FAC at 152-55).

25

26  _____

27          [1]The only named CSU defendants other than Garcia and Virjee are CSU Chancellor
    Timothy White and the CSU Board of Trustees ("Board").  There have been no plausible
28  allegations against defendant White, who is hardly mentioned in the Objections.  The Board is
    named only in plaintiff's Title VI and Title IX claims, discussed below.

1     As for the Magistrate Judge's determination that plaintiff's Title VI and Title

2 IX claims fail because, among other reasons, the CSU Board of Trustees ("Board")

3 had no alleged notice of discriminatory conduct (see Report and Recommendation

4 at 41), plaintiff now argues for the first time that the Board is liable under Title VI

5 and Title IX based on retaliation, which does not require the funding recipient's

6 prior notice of the conduct.[2]  (Objections at 51-56); see Jackson v. Birmingham Bd.

7 of Educ., 544 U.S. 167, 174 (2005) ("[W]hen a funding recipient retaliates against

8 a person *because* he complains of sex discrimination, this constitutes intentional

9 'discrimination' 'on the basis of sex,' in violation of Title IX.") (internal quotation

10 and citation omitted); Mansourian v. Regents of Univ. of Cal., 602 F.3d 957, 967

11 (9th Cir. 2010) ("[T]he Supreme Court has made clear that no notice requirement is

12 applicable to Title IX claims that rest on an affirmative institutional decision.")

13 (citing Jackson, 544 U.S. at 182).  However, such claims would also clearly fail

14 because plaintiff has not plausibly alleged that he complained of race-based or sex-

15 based discrimination (or any conduct that would reasonably have been construed as

16 such), or that he was dismissed from the counseling program *because of* such

17 complaints.[3]  See Jackson, 544 U.S. at 174.  In addition, to the extent that plaintiff

18 now claims that the Board retaliated by changing its address, making it more

19

20     [2]Title VI and Title IX protect against intentional discrimination on the basis of race,
21 color, or national origin, and on the basis of sex, respectively, by entities that receive federal
financial assistance.  42 U.S.C. § 2000d (Title VI); 20 U.S.C. § 1681 (Title IX).

22     [3]Absent any factual allegations that the Board had notice of such conduct or complaints,
23 the only alleged action that could implicate the Board is plaintiff's dismissal.  See Mansourian,
602 F.3d at 967 (absent notice, Title IX claim must "rest on an affirmative institutional
24 decision") (citing Jackson, 544 U.S. at 182); see also Davis v. Monroe Cty. Bd. of Educ., 526
25 U.S. 629, 640 (1999) ("[A] recipient of federal funds may be liable in damages under Title IX
only for its own misconduct.").  Although plaintiff suggests that the counseling program's stated
26 reasons for dismissing him were mere pretext because the reasons were never explained to him
(Objections at 79-81), several of these reasons are in fact supported by plaintiff's own
27 allegations, as the Magistrate Judge pointed out (see Report and Recommendation at 35-36).
28 The allegations do not support a reasonable inference that there were discriminatory or
retaliatory motives for plaintiff's dismissal.

1  difficult for plaintiff to serve the Board in this action (see Objections at 56-59), his

2  argument defies reason.

3      In the Objections, plaintiff also states for the first time that if given the

4  chance to file an amended pleading, he intends to assert a Title IX claim against

5  defendants Brueck, Volk, and Pacific Hills Treatment Center ("PHTC").[4]

6  (Objections at 60-61).  Defendants Brueck and Volk were plaintiff's practicum

7  training supervisors at Covenant Hills Treatment Center ("CHTC"), which is

8  owned by PHTC.  According to plaintiff, his Title IX claim would be based on

9  allegations that Brueck and Volk discriminated against plaintiff "many times" by

10 treating him differently than the female CSUF students, along with allegations that

11 Brueck sexually harassed plaintiff "a few times."  (See Objections at 60-78).  First,

12 individuals such as Brueck and Volk cannot be sued under Title IX.  See Lopez v.

13 Regents of Univ. of Cal., 5 F. Supp. 3d 1106, 1120 (N.D. Cal. 2013) (only

14 institutions, not individuals, may be liable under Title IX)  Second, assuming that

15 CHTC/PHTC would even be subject to Title IX,[5] plaintiff's allegations do not

16

17

18     [4]Plaintiff also states that he will "withdraw[] all the discrimination based on gender and
19 race claims" against these same defendants – by which he is presumably referring to the Equal
   Protection claims against them, since his proposed Title IX claims against these defendants
   would be based on gender discrimination.  (Objections at 60).

20
21     [5]Title IX applies to "any education program or activity receiving Federal financial
   assistance."  20 U.S.C. § 1681(a).  Although CSU, as a funding recipient education
22 program/institution, could be held liable under Title IX for sex discrimination against CSU
   students at CHTC when CSU programs require or facilitate students to participate in activities at
23 CHTC, see 45 C.F.R. § 86.31(d)(1), CHTC/PHTC is not subject to Title IX liability itself unless
   it qualifies as an "educational program or activity" that receives federal funding.  20 U.S.C.
24 § 1681(a); see also O'Connor v. Davis, 126 F.3d 112, 117 (2nd Cir. 1997) ("[I]n order to
   implicate Title IX in the first instance, an entity must have features such that one could
25 reasonably consider its mission to be, at least in part, educational."), cert. denied, 522 U.S. 1114
   (1998); Doe v. Mercy Catholic Med. Ctr., 850 F.3d 545, 555-56 (3d Cir. 2017) (adopting Second
26 Circuit's O'Connor holding, and adding that applicable programs should have certain features
27 such as: "(A) a program is incrementally structured through a particular course of study or
28                                                                        (continued...)

                                            6

1   plausibly demonstrate that he was ever treated differently because of his gender, or

2   that any such treatment (including alleged sexual harassment) is attributable to the

3   entity (CHTC/PHTC) in any respect.[6]

4        In sum, plaintiff has failed to identify any error in the Magistrate Judge's

5   determination that the First Amended Complaint warrants dismissal, and

6   amendment would be futile.  Accordingly, the Court overrules the Objections, and

7   agrees with, approves, accepts and adopts the Report and Recommendation.

8        IT IS HEREBY ORDERED that (1) Defendants' Motions are granted;

9   (2) plaintiff's requests to amend are denied, the First Amended Complaint is

10  dismissed without leave to amend, and this action is dismissed with prejudice; and

11

12        [5](...continued)

13  training, whether full- or part-time; (B) a program allows participants to earn a degree or
    diploma, qualify for a certification or certification examination, or pursue a specific occupation

14  or trade beyond mere on-the-job training; (C) a program provides instructors, examinations, an
    evaluation process or grades, or accepts tuition; or (D) the entities offering, accrediting, or

15  otherwise regulating a program hold it out as educational in nature"); Jeldness v. Pearce, 30 F.3d
    1220, 1224-25 (9th Cir. 1994) (holding that Title IX applies to educational programs in state

16  prisons).  As a drug and alcohol treatment center, CHTC seems unlikely to qualify.

17

18        [6]Plaintiff argues that new allegations in the Objections would support a Title IX claim
    regarding defendant Brueck's conduct.  (See Objections at 71-76).  The new allegations include

19  an incident in which Dr. Brueck, discussing how plaintiff was handing his group counseling
    sessions, described counseling as "fluid" and then made a gesture that plaintiff somehow

20  interprets as intending to communicate to plaintiff that "in order to make it in this field of
    counseling, Plaintiff will eventually need to participate in hardcore sex with Dr. Brueck and Mr.

21  Volk, standing up, in the water" – or more specifically, "in the San Clemente ocean!"
    (Objections at 72-73).  Plaintiff also explains that a Title IX claim would be based on allegations

22  that, during a different meeting with plaintiff, Dr. Brueck sat on a bed with plaintiff (in a room
    that contained beds but was used as an office to conduct meetings and counseling sessions) and

23  was wearing a hidden "mechanical device," so that the CSUF counseling program could listen

24  in, whereas Dr. Brueck allegedly would not sit on the same bed and wear a secret mechanical
    listening device when meeting with female students.  (Objections at 74-76; see also FAC at 230-

25  31).  Plaintiff's belief in this hidden listening device is wholly speculative and implausible, and
    he does not allege that he notified anyone of sexual harassment or conduct that could reasonably

26  be construed as such.  See Mansourian, 602 F.3d at 967 ("In sexual harassment cases, it is the

27  deliberate failure to curtail known harassment, rather than the harassment itself, that constitutes
    the intentional Title IX violation.") (citing Davis, 526 U.S. at 641).

28

(3) Judgment is to be entered accordingly.

IT IS FURTHER ORDERED that the Clerk serve copies of this Order, the Report and Recommendation, and the Judgment herein on plaintiff and on  counsel for defendants.

IT IS SO ORDERED.

DATED:  12/18/2020

HONORABLE R. GARY KLAUSNER
UNITED STATES DISTRICT JUDGE